IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| DANNY ALLEN, ET. AL. | § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. G-06-467 |
| THE CITY OF GALVESTON, TX, | § § | |
| Defendant | § § | |

## OPINION AND ORDER

Plaintiffs' Danny Allen, Darren Allen, and Leonard Tottenham initially brought this action under 42 U.S.C. § 1983 against Defendants The City of Galveston, Texas and Galveston City Police Chief Kenneth Mack alleging that Defendants violated their Constitutional rights.[1] Plaintiffs also asserted a claim against Defendants under the Texas Tort Claims Act.

Before the Court are Defendants' Motion to Dismiss for Failure to State a Claim (Instrument No. 8) and Memorandum of Law in Support of its Motion (Instrument No. 9), Plaintiffs' Response to Defendants' Motion (Instrument No. 11), and Plaintiffs' Amended Complaint (Instrument No. 13). This Court, having carefully considered the parties' motions and applicable law, now issues its Opinion and Order.

---

[1] Plaintiffs initially filed this action in state court and Defendants removed the case.

I.

## BACKGROUND

In their Amended Complaint Plaintiffs Danny Allen, Darren Allen and their cousin, Leonard Tottenham, allege that on July 5, 2005,[2] at approximately 2:00 a.m., they were outside in front of their family business, Club D' Elegance, when Galveston Police Officer Powers drove up in his police cruiser with lights flashing and siren on. (Am. Compl. at 3). Officer Powers instructed the Plaintiffs to leave the premises or go inside. (*Id.* at 3-4). Instead of complying with Officer Powers' instruction, Plaintiffs attempted to explain that they were there working at their family's business. (*Id.* at 4). Officer Powers then exited his vehicle, asked Plaintiffs if they understood English, informed them that the club was closed, and again instructed them to either go inside or go home. (*Id.*). Plaintiff Danny Allen once again attempted to explain to Officer Powers that they were all working at the club, to which Officer Powers merely reiterated his instruction to go inside or go home. (*Id.*). Officer Powers then returned to his cruiser, retrieved his flashlight, and instructed the Plaintiffs to put their hands on the car and spread their legs. (*Id.*). At or around this time, Officer Simmons arrived to provide assistance to Officer Powers. (*Id.*). Plaintiffs claim that just before Officer Powers ordered them to place their hands on the car and spread their legs, Danny Allen instructed Darren Allen and Leonard Tottenham to go inside in compliance with Officer Powers' order. (*Id.*). As Darren Allen and Leonard Tottenham moved to enter the club, Plaintiffs allege that Officer Powers struck Danny Allen and knocked him aside in an attempt to stop the others from entering the club. (*Id.* at 5). Plaintiffs claim that Officer Powers then pursued Darren

---

[2] The Court observes that Plaintiffs appear to have mistakenly referred to the date as 2006, instead of 2005. (Am. Compl. at 3; 6).

Allen and Leonard Tottenham into the club "where at some point he wrestled, struck, grabbed and sprayed them." (*Id.*). Officer Powers allegedly also wrestled, pushed, grabbed and struck, and sprayed Danny Allen and Leonard Tottenham outside the club. Officer Powers, with the assistance of Officer Simmons, allegedly grabbed Danny Allen from behind after he had been pepper-sprayed and repeatedly struck him. (*Id.*). Plaintiffs claim that at no time did they ever attempt to resist the police officers and at no time did any other officers "attempt to prevent the continued unprovoked beating of the Plaintiffs." (*Id.*).

Plaintiffs claim that following the incident, Darren Allen, who was not charged with any crime, was simply left at the club without receiving medical attention for the injuries allegedly inflicted and that his father later had to take him to the hospital to be treated. (*Id.*).

Plaintiff Leonard Tottenham claims that following the incident he was handcuffed, charged with resisting and evading arrest, and transported to the County Jail by Officer Powers. He alleges that he received additional abuses of unlawful detention and excessive force by Officer Powers that included being hosed down with water outside the jail building while he was handcuffed and on the ground in a prone position. (*Id.*). Leonard Tottenham also claims that he was never provided any medical attention for his injuries and that the charges that were initially brought against him were later dropped by the District Attorney. (*Id.* at 5-6).

Plaintiff Danny Allen alleges no medical attention was provided to him after the incident. (*Id.*). He further alleges that three days after the incident he was charged by the City with interfering with the duties of a public servant, but that this charge was later reduced to a misdemeanor charge of resisting arrest. (*Id.*) Danny Allen states that he was tried on the charges and found not guilty by a jury. (*Id.*). Plaintiffs allege that throughout Danny Allen's four-day

misdemeanor trial, which was prosecuted by two attorneys for the City, approximately twelve police officers attended each day of the trial in uniform and while on duty for the City. (*Id.*). Plaintiff Danny Allen claims he was fired from his job as a Sheriff's Department Deputy for the Galveston County Sheriff Department as a result of the July 6, 2005 incident. (*Id.*).

Plaintiffs allege that the City of Galveston is liable under § 1983 for the "acts of unprovoked and unlawful physical abuse, assault, and unlawful detention" used against them by the police officers, including Officer Powers and Officer Simmons, because it has official policies, de facto policies, and/or customs that require police officers to show unqualified support for other officers. (*Id.* at 7, 10). Plaintiffs claim this policy or custom of requiring unqualified support for fellow officers, which was in place before July 5, 2005, and continues to in place, was "known, condoned and encouraged by the City" and was the moving force behind the violation of their constitutional rights on July 5, 2005. (*Id.* at 7, 9). In essence, it is Plaintiffs' contention that through a policy or custom of requiring unqualified support the City and Police Department ratify its police officers' unlawful conduct and further educates, trains, and supervises them that "they are always right in any set of circumstances" and causes or encourages them "to engage in illegally detaining [and] using excessive force." (*Id.* at 7). Plaintiffs maintain that this policy or custom was graphically illustrated through the City's and the Police Department's requirement that its officers attend Plaintiff Danny Allen's misdemeanor trial, in full dress uniform, while on duty and being paid. (*Id.*) Plaintiffs also refer to a subsequent incident involving another citizen and claim that this incident is just another illustration of how this policy or custom encourages police officers to violate the constitutional rights of citizens. In particular, Plaintiffs allege that on September 9, 2006, Officer Powers and other officers arrested Margaret Nix immediately after she called the Police

Department to complain about Officer Powers having his dog off-leash in violation of local ordinances in the common areas of her apartment complex. (*Id.* at 7-8). Plaintiffs also allege that following the July 5, 2005, incident, they reported the unlawful conduct of the officers to the City Police Department, but received no response of any kind, nor were the officers ever disciplined. (*Id.* at 7).

Plaintiffs seek past and future "42 U.S.C. § 1983 damages," interest, costs, and attorney fees. (*Id.* at 11-12).

## II.

### DISCUSSION

A. *Legal Standard*

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept as true all well-pleaded allegations in the complaint, and must liberally construe the complaint in a light most favorable to the plaintiff. *Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). A Rule 12(b)(6) motion does not serve to question a plaintiff's well-pled facts, but rather tests the legal foundation of the plaintiff's claims. *See Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand L.L.P.*, 322 F.3d 147, 158 (2nd Cir. 2003). Thus, unlike a motion for summary judgment, a motion to dismiss should only be granted when it appears without a doubt that the plaintiff can prove no set of facts in support of his claims that would entitled him to relief. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). The Fifth Circuit has also cautioned that dismissal for failure to state a claim is disfavored and will be

appropriate only in rare circumstances. *Collins*, 224 F.3d at 498; *Mahone v. Addicks Util. Dist. of Harris County*, 836 F.2d 921, 926 (5th Cir. 1988).

In addition, this Court notes that prior judicial attempts to impose a "heightened pleading standard" for § 1983 claims against municipalities have been expressly rejected by the Supreme Court. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 167-69 (1993) (disapproving the argument that "[t]o establish municipal liability under § 1983 … a plaintiff must do more than plead a single instance of misconduct", the Court concluded that plaintiff's complaint, which included allegations of a "boilerplate" variety, was adequate to survive a motion to dismiss). A plaintiff, therefore, need only submit "a short and plain statement of the claim showing the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

  B. *Effect of Amended Complaint*

As a preliminary matter, since Defendants filed their Motion to Dismiss, Plaintiffs filed an Amended Complaint. Plaintiffs Amended Complaint is now the "live" Complaint in this action. This raises the initial question concerning the precise effect Plaintiffs' amendment has on Defendant's Motion. At least one panel of the Fifth Circuit has stated that a Motion to Dismiss filed in response to an Original Complaint does not address a subsequently filed Amended Complaint. *See Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 302 (5th Cir. 1989) (stating that for purposes of preserving an appeal, Rule 12(b)(6) Motion filed in response to an Original Complaint did not address the Amended Complaint). Read by itself, that language would seem to indicate that Defendant's Rule 12(b)(6) Motion is void. Such an interpretation, however, would "exalt form over substance" and a more reasoned approach would be to consider the differences between the original complaint and the amended version. *See* 6 Charles Alan Wright, Arthur R. Miller, Mary Kay

Kane, *Federal Practice & Procedure* § 1476 (1990). To the extent that the defects raised in the Motion to Dismiss remain in the Amended Complaint, a court should simply apply the Motion to that pleading. *See* Wright & Miller, *supra*, § 1476 (stating that a court should not require defendants to file a new Motion to Dismiss "simply because an amended pleading was introduced while their motion was pending"). Consequently, this Court will examine the claims set forth in Plaintiffs' Amended Complaint in light of the defects in their Original Complaint that were raised by Defendants' Motion to Dismiss.

Upon review of Plaintiffs' Amended Complaint, several defects in their Original Complaint that were raised by Defendants in their Motion to Dismiss are now moot. In particular, Plaintiffs have named only the City of Galveston as the Defendant, thus, Defendants' Motion to Dismiss, pertaining to the claims previously asserted claims against the Galveston City Police and/or Chief Kenneth Mack, are now moot. Plaintiffs have also amended their Complaint to exclude their previously alleged claim that their Fourteenth Amendment rights were violated, rendering the Motion to Dismiss on this point also moot. Finally, in their Amended Complaint, Plaintiffs have abandoned the state law claims they previously asserted under the Texas Tort Claims Act.

Accordingly, what remains is Plaintiffs' § 1983 action against Defendant City of Galveston for allegedly violating their Fourth Amendment rights resulting from a City's policy or custom. The Court will, therefore, proceed to examine the sufficiency of this claim.

C. *Plaintiff's Claims Under § 1983 & Municipal Liability*

"Section 1983 provides a remedy against 'any person' who, under the color of state law, deprives another of rights protected by the Constitution." *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). "Rather than creating substantive rights, § 1983 simply provides a remedy

for the rights that it designates." *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir. 1989). Although municipalities are "persons" within the meaning of § 1983, they may only be held liable if the constitutional harm suffered was the result of an "official policy, custom, or pattern." *See Monell v. Dept. of Social Services*, 436 U.S. 658, 692-94 (1978); *Burns v. City of Galveston*, 905 F.2d 100, 102 (5th Cir. 1990). Municipalities may not be held liable under a theory of *respondeat superior* or vicarious liability. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 817 (1985); *Monell*, 436 U.S. at 691; *Doe v. Taylor Indep. School Dist.*, 15 F.3d 443, 452 (5th Cir. 1994). In addition, municipalities may not be held liable under § 1983 for mere negligence or oversight. *See Rhyne v. Henderson County*, 973 F.2d 386 392 (5th Cir. 1992) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989)).

"To support a claim based upon the existence of an official custom or policy, [a plaintiff] must plead facts which show that: 1) a policy or custom existed; 2) the governmental policy makers actually or constructively knew of its existence; 3) a constitutional violation occurred; and 4) the custom or policy served as the moving force behind the violation." *Meadowbriar Home for Children, Inc. v. G.B. Gunn*, 81 F.3d 521, 532-33 (5th Cir. 1996) (citing *Palmer v. City of San Antonio*, 810 F.2d 514, 516 (5th Cir. 1987)). A plaintiff must, therefore, allege facts sufficient to show, if proven, that defendant, through its policymakers, formulated or had constructive knowledge of an official policy that sanctioned or encouraged a deprivation of rights protected by the Constitution. *See Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984).

It is not necessary, however, for a plaintiff to plead or prove that the injuries occurred as a result of an unconstitutional policy (*Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001)), and "[a]cts of *omission*, as well as *commission*, may serve as a predicate for finding a

policy or custom. *Batiste v. City of Beaumont*, 421 F.Supp.2d 969, 987 (E.D. Tex. 2005). A policy need not be a formal regulation, ordinance or resolution. *Id.* Instead, the Fifth Circuit has defined an "official policy" as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Webster*, 735 F.2d at 841; *see also Palmer*, 810 F.2d at 516. Moreover, the Fifth Circuit has recognized that a "policymaker could 'ratify' a subordinate's illegal conduct, thus putting the force of municipal policy behind it." *Milam v. City of San Antonio*, 113 Fed.Appx. 662, 626 (5th Cir. 2004). Allegations assigning § 1983 liability to a municipality in this manner are referred to as the "ratification theory." *Id.* Although the ratification theory is "most readily conceptualized in contexts like employment", it has not been limited to this area. *Id.* Instead, in *Milam* the Fifth Circuit explained:

> [E]ven though a policymaker's response to a particular incident may not cause the injury, the response might provide evidence of the content of a municipality's policies. That, the failure to take disciplinary action in response to an illegal arrest, when combined with other evidence, could tend to support an inference that there was a preexisting de facto policy of making illegal arrests: the policymaker did not discipline the employee because, in the policymaker's eyes, the employee's illegal conduct actually conformed with municipal policy.

*Id.* at 628.

Here, it is Plaintiffs contention that Defendant City of Galveston, through its "chief, city mayor, city manager, city council and board of trustees" as the policy-making authority, approved and adopted, through its unqualified show of support policy, its employees' unlawful detentions and uses of excessive force. Plaintiffs allege that the City, by it's failure to investigate or respond to their report concerning the unlawful arrest and their allegations of excessive force, "ratified" the unlawful conduct of its officers and paved the path to future unlawful acts against other citizens, such as Mrs. Nix. As suggested by the Court in *Milam*, under limited circumstances, it is possible to make the required showing that the alleged constitutional deprivations resulted from the municipality's ratification of it's employees conduct. Plaintiffs may, however, face difficulty in ultimately prevailing on their claims since the fact that the policymakers failed to take disciplinary action does not normally show that they knew of and approved the illegal character of officers' actions or that "it accorded with municipal policy." *Milam*, 113 Fed.Appx. at 628. Furthermore, it may be difficult to ultimately establish "how a policymaker's ineffectual or nonexistent response to an incident, which occurs well *after* the fact of the constitutional deprivation, could have *caused* the deprivation." *Id.* at 628.

Plaintiffs also allege that this unqualified show of support policy or custom, which they claim encourages police officers to engage in unlawful detention and use excessive force, has also resulted in the improper training, retraining, supervising, disciplining, and counseling of police officers. (Am. Compl. at 6-7; 11). In limited circumstances, it is possible to make the required showing that the constitutional deprivations resulted from an "official policy, custom, or pattern" by demonstrating that the municipality failed to train or supervise its officers. *See City of Canton*, 489 U.S. at 387 (holding that "inadequacy of training may serve as a basis for § 1983 liability" but only where the "failure to train amounts to deliberate indifference to the rights of persons with whom the

10

police come into contact"); *Milam*, 113 Fed.Appx. at 628 (recognizing that "municipal policymakers who fail to supervise and to discipline their police officers, acting with deliberate indifference to the citizen's rights, could create municipal liability if the lack of supervision then caused a deprivation."). Similarly, "[i]nadequate training of municipal officers can be deemed official policy." *Batiste*, 421 F.Supp.2d at 987 (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). In such cases, the actions of the municipality before and after the event in question may shed light on the actual policy or custom in existence. Although failure of a municipality to adopt proper policies may sometimes amount to an "official policy, custom, or pattern", this is generally in only exceptional cases. *See Board of the County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404-05 (1997) (explaining that, for purposes of imposing liability, "[i]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality … the plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged."). Normally, the specific act of omission of failure to train, supervise or discipline "usually gives rise to Section 1983 liability only in situations in which there is a history of widespread abuse" and absent ultimate proof of such facts, deliberate indifference cannot be established. *Batiste*, 421 F.Supp.2d at 987.

The Court further notes that actually establishing liability under § 1983 is a difficult task. To ultimately prevail, Plaintiffs must show evidence of a policy or custom which caused Plaintiffs' injuries, and which is attributable to the City of Galveston. *See Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984). More than one instance of a constitutional injury is normally required to demonstrate such a policy or custom. *See Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997). Furthermore, in order to prevail, Defendant must be proven to have acted with deliberate indifference to the known consequence that the policy would result in constitutional violations. As

11

the Fifth Circuit has explained "[d]eliberate indifference of this sort is a stringent test and 'a showing of simple or even heightened negligence will not suffice' to prove municipal culpability." *Piotrowski*, 237 F.3d at 579. A municipal defendant is not necessarily liable simply because it employs some alleged tortfeasors. *See Brown*, 520 U.S. at 403. Moreover, as the Fifth Circuit was careful to explain in *Milam*, the "task of trying to hang the evidence presented at trial onto the doctrinal hooks of the ratification theory" is "not an easy fit because, at least facially, an illegal arrest that is completed without the involvement of any policymaker does not look like the typical situation in which the policymaker could 'approve[] [the employee's] decision and the basis for it' such that municipal policy can said to have caused the harm." *Milam*, 113 Fed.Appx. at 627 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

     Nevertheless, the Court is mindful that Plaintiffs are not yet at the summary judgment or trial stage, so the only issue is whether they have stated a claim that survives Defendant's 12(b)(6) Motion. Not unlike *Leatherman*, Plaintiffs' Amended Complaint does contains "boilerplate" language. However, Plaintiffs allege a constitutional violation, specifically, a violation of the Fourth Amendment. Plaintiffs allege that Defendant's agents acted under color of state law. Plaintiffs claim that the police officers' conduct was the result of the unconditional or unqualified show of support that the City employs, which they claim was in effect before the incident that occurred on July 5, 2005. Plaintiffs contend that the show of support policy or custom encourages officers to act unlawfully and that the City's ratification of the officers unlawful conduct was graphically illustrated by dozens of City Police officers they claim were required, pursuant to this policy or custom, to attend, in full dress uniform and while being paid, the four-day misdemeanor trial of Plaintiff Danny Allen. Plaintiffs claim that they reported the occurrence to the City, but no action was taken. Plaintiffs also allege that subsequent to the occurrence on July 5, 2005, police

officers, including Officer Powers, unlawfully arrested another citizen, Mrs. Nix, immediately following her telephone complaint concerning Officer Powers and his dog which Plaintiffs allege further illustrates the effect of the City's policy or custom. If these allegations are ultimately proven true, they might, conceivably, suffice to establish municipal liability. Given that Plaintiffs' allegations must be viewed in the light most favorable to their position, (*see Collins*, 224 F.3d at 498), and given the Court cannot impose any "heightened pleading standard" in this § 1983 action, (*see Leatherman*, 507 U.S. at 167), the Court, with some reservation, concludes that Plaintiffs' have sufficiently stated a claim and, therefore, Defendant's Motion to Dismiss must be **DENIED**.

## CONCLUSION

Accordingly, for the foregoing reasons, it is **ORDERED** that Defendant's Motion to Dismiss (Instrument No. 8) is **DENIED**.

**DONE** at Galveston, Texas, this ____30th____ day of March, 2007.

_____
John R. Froeschner
United States Magistrate Judge