IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| DANNY ALLEN, ET. AL. | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-06-467 |
| | § | |
| THE CITY OF GALVESTON, TX, | § | |

## OPINION AND ORDER

Before the Court, with the consent of the parties, is the Motion for Summary Judgment filed by Defendant City of Galveston, Texas (hereinafter "the City"), against Plaintiffs Danny Allen, Darren Allen and Leonard Tottenham (Docket Entry ("Doc.") Nos. 31, 32). In response, Plaintiffs filed an Opposition to Defendant's Motion, along with numerous exhibits (Doc. Nos. 37, 38-43) and sought a continuance to obtain additional discovery to oppose Defendant's Motion, to which Defendant replied. (Doc. No. 46). In response to Plaintiffs' request, the Court ordered the Defendant to make available for viewing all letters of disciplinary action taken against police officers with the Galveston Police Department ("GPD") from those officers' civil service files from July 5, 2002 through July 5, 2005, and Defendant complied. After obtaining this additional discovery, and not requesting any additional discovery, Plaintiffs filed a Motion for Leave to Amend Response and Memorandum of Support in Opposition to Defendant's Motion for Summary Judgment and Surreply to Defendant's Reply to Plaintiffs' Response in Opposition to Defendant's Motion for Summary Judgment. (Doc. Nos. 58, 59). Defendant filed a Response to Plaintiffs' Surreply to the Defendant's Reply to Plaintiffs' Response in Opposition to Summary Judgment. (Doc. Nos. 60, 61). On November 2, 2007, Plaintiffs filed a "Sur-Surreply to [Defendant's] Response to Plaintiff's Surreply to [Defendant's] Reply to Plaintiff's Response in Opposition to Summary Judgment. (Doc. No. 62).

Having carefully considered the parties' motions, responses, replies and surreplies; the parties' submission; and the applicable law, the Court, for the reasons set forth below, grants Defendant's Motion for Summary Judgment.

## I. **Factual Background**

On July 5, 2005, after 2:00 a.m., police officers with the Galveston Police Department (hereinafter "GPD") were dispatched to Club D' Elegance (hereinafter "the club") after receiving complaints of loud music, loud people and a crowd. Officer Powers was one of the officers who responded to the call. He attempted to get the club's patrons to go home because the club was closed. As depicted on the videotaped footage,[1] Officer Powers approached the club, with his lights activated and siren on, and he observed several individuals, who were later identified as Plaintiffs Danny Allen, Darren Allen and their cousin, Leonard Tottenham, standing on the sidewalk outside the club after it was closed. While still inside his squad car, Officer Powers motioned for the Plaintiffs to move on. Plaintiffs made no effort to move and motioned to Officer Powers to move on. Officer Powers stopped his vehicle in front of the club, partially exited it, and ordered Plaintiffs to leave the premises because the club was closed. Although it is unclear if Officer Powers heard them, Plaintiffs, through Danny Allen, told Officer Powers that this was their family's business and that they were there working. Officer Powers then exited his vehicle and approached the Plaintiffs to investigate why they were not complying with his orders. Plaintiff Danny Allen then communicated to Officer Powers that he was Danny Allen, that the club was his family's business, and they were all working at the club. All the Plaintiffs were in street clothes, without any club insignia, and the evidence is undisputed that Officer Powers did not know the identify of any of the Plaintiffs. Officer Powers radioed in and

---

[1] Defendant has submitted, with no objection from Plaintiffs, a copy of videotape taken from Officer Powers' police vehicle.

requested backup because he felt Plaintiffs were resisting his orders. Although the sequences of events that followed is in dispute, Plaintiffs allege that either just before or coinciding with Officer Powers orders for them to place their hands on the car, Danny Allen instructed Darren Allen and Leonard Tottenham to go inside the club. As Darren Allen and Leonard Tottenham moved to enter the club, Officer Powers instructed the men to stay where they were and not to go inside the club, but his orders were not followed. Officer Powers rushed past Danny Allen in an attempt to stop the others from entering the closed club. Plaintiffs allege that Officer Powers grabbed and sprayed Darren Allen with pepper spray at the entrance to the club and pursued Leonard Tottenham inside the club where he allegedly wrestled with, struck and grabbed him.[2] Sergeant Simon, who along with other officers had arrived at the club to assist Officer Powers, grabbed Danny Allen from behind to restrain him from pursuing Officer Powers. As depicted on the videotape, very shortly thereafter, Officer Powers brought Tottenham out of the club in a headlock. Plaintiffs allege that, while outside of the view of the camera, Officer Powers hit or punched Tottenham several times.

    Plaintiff Leonard Tottenham was handcuffed, charged with resisting and evading arrest and, as instructed by Sergeant Simon, transported to the County Jail by Officer Powers. Tottenham alleges that after they arrived at the jail and while he was fully dressed and in handcuffs, Officer Powers used a water hose outside the jail building to remove the pepper spray from his eyes and face. Tottenham also alleges that he was never provided any medical attention for his injuries at the jail. The charges that were initially brought against Tottenham were later dropped by the District Attorney.

    Plaintiff Darren Allen was not charged with any crime and he was not arrested. Plaintiffs allege that officers merely left Darren Allen at the club without any treatment after being exposed to

---

[2] Plaintiffs Leonard Tottenham and Danny Allen, although not directly sprayed with pepper, claim indirect exposure to pepper spray in the air.

pepper spray and that his father took him to the hospital, where he was treated and released.

Plaintiff Danny Allen alleges no medical attention was provided to him after the incident, yet in his deposition, he testified that, with the exception of being indirectly exposed to pepper spray, he suffered no physical injuries. Approximately two to three days after the incident and pursuant to an arrest warrant issued by a state court judge, Danny Allen was arrested by GPD officers. Danny Allen was tried on a misdemeanor charge and, following a four day trial, was found not guilty by a jury. Plaintiffs complain that throughout Danny Allen's four-day trial, which was prosecuted by two attorneys for the City, approximately twelve police officers attended each day of the trial in uniform and while on duty for the City. Thereafter, Plaintiff Danny Allen was fired from his job as a Deputy for the Galveston County Sheriff Department.[3]

Plaintiffs' Danny Allen, Darren Allen, and Leonard Tottenham bring this action under 42 U.S.C. § 1983 against Defendant The City of Galveston, Texas, alleging that, as a result of a City policy or custom, their Fourth Amendment rights were violated. Plaintiffs seek past and future "42 U.S.C. § 1983 damages," interest, costs, and attorney fees.

## II. Discussion

Plaintiffs Danny Allen, Darren Allen, and Leonard Tottenham allege the City of Galveston is liable due to GPD's policy or custom of unqualified support for its officers (i.e., "code of silence"), which was the "moving force" for the unlawful detention, arrest and excessive force that was used against them in violation of their Fourth Amendment rights. Plaintiffs allege that GPD's policy or custom of unqualified support undermines training, supervision and hiring and seek to impose liability against the City of Galveston based on a theory that it inadequately trained, supervised, and hired

---

[3] The evidence reflects that the County completed an investigation of not only Danny Allen's conduct during on July 5, 2005 incident, but numerous other incidents, and terminated him as a result.

4

GPD employees.  Plaintiffs also allege that the City is liable based on a ratification theory. Defendant, City of Galveston refutes that Plaintiffs' Fourth Amendment rights were violated in any way and further asserts that even if a constitutional violation could be established, Plaintiffs have failed, as a matter of law, to make the requisite showing of proof on any element required to impose municipal liability.

In *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), the Supreme Court held that a government entity can be found liable under Section 1983 if the entity itself causes the constitutional violation at issue. *Id.* at 690-91. A municipality cannot be liable, however, merely because it employs a tortfeasor. *Monell*, 436 U.S. at 691-94.  Vicarious liability is not a basis for recovery under Section 1983. *Esteves v. Brock*, 106 F.3d 674, 677 (5th Cir. 1997). Rather, it is only when the execution of the government's policy or custom inflicts the injury that the governmental entity may be held liable under Section 1983. *Id.* In contrast, when the discretionary decisions of a local governmental official are limited by official governmental policies, the official's disobedience of, or departure from, those policies is not an act of the governmental entity for Section 1983 purposes. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121-22 (1988); *see also, Pembaur v. Cincinnati*, 475 U.S. 469, 480 (1986) (liability may be imposed on a county "only for acts for which the [county] itself is actually responsible, 'that is, acts which the [county] has officially sanctioned or ordered.'"). Further, when a governmental employee, who is not a policymaker, acts in a manner inconsistent with established governmental policy, the governmental employer cannot be held liable under Section 1983. *Praprotnik*, 485 U.S. at 121-22. Finally, where a case is proceeding, not against any of the police officers in any capacity or against the chief of police in an individual capacity, such as the case here, the Court must be careful not to collapse municipal liability into respondeat superior liability by failing to adhere to the rigorous requirements of municipal "culpability and causation."

*See Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir.1998); *Bd. of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 415 (1997).

In the Fifth Circuit, in accordance with *Monell*, municipal liability under § 1983, requires proof of three elements: (1) an official policy or custom, of which (2) a final policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir.2002); *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir.2001).

As set forth by the Fifth Circuit, a plaintiff must initially prove the existence of a formal or informal policy of the municipality. *See Snyder*, 142 F.3d at 798 (citing *Rodriguez v. Avita*, 871 F.2d 552, 554-55 (5th Cir.1989)). An official policy may be proven with "[a] policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984). Where there is no official adoption or authorization, a municipal policy may be shown by a custom or practice which is "a persistent, widespread practice of City officials or employees ... so common and well-settled as to constitute a custom that fairly represents municipal policy." *Webster*, 735 F.2d at 841; *Piotrowski*, 237 F.3d at 579. Accordingly, an apparently unofficial policy may be evidence of an unwritten or unarticulated official policy. Plaintiffs, however, may not show a policy through mere proof of isolated or random incidents. *See Piotrowski*, 237 F.3d at 578 (citing *Bennett v. City of Slidell*, 728 F.2d 762, 768 n. 3 (5th Cir.1984)).

Proof of the existence of a policy or custom is insufficient to sustain § 1983 liability without actual or constructive knowledge of that policy on the part of a policymaker. Showing constructive knowledge of a municipal custom requires "evidence that the incidents were the 'subject of prolonged

6

public discussion or of a high degree of publicity.' " *Pineda*, 291 F.3d at 328 (citing *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir.1989)).

Moreover, "[w]hile an unconstitutional official policy renders a municipality culpable under § 1983, even a facially innocuous policy will support liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." *Piotrowski*, 237 F.3d at 579. "Deliberate indifference of this sort is a stringent test, and 'a showing of simple or even heightened negligence will not suffice' to prove municipal culpability." *Id*. "It follows that each and any policy which allegedly caused constitutional violations must be specifically identified by a plaintiff, and it must be determined whether each is facially constitutional or unconstitutional." *Id*.

Finally, in addition to culpability, there must be a direct causal link between the municipal policy and the constitutional deprivation. A plaintiff must meet a high threshold of proof by showing that the alleged custom or policy was the "moving force" behind the constitutional injury. To show moving force, Plaintiffs are required to "demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Brown*, 520 U.S. at 404; *see also Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir.1992) ("a direct causal connection must exist between the policy and the alleged constitutional deprivation"). The Fifth Circuit has expressly cautioned that "[t]o adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 391 (1989). Moving force is not "a mere but for coupling between cause and effect." *Fraire*, 957 F.2d at 1281 (citing *City of Canton*, 489 U.S. at 388-89, 109 S.Ct. 1197). Merely showing that correcting the allegedly deficient policy would have prevented the claimed constitutional injury is therefore not sufficient to meet a plaintiff's burden. *See Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 386 (5th Cir.2005).

7

Rather, the "municipal policy must be *affirmatively* linked to the constitutional violation." *Fraire*, 957 F.2d at 1281 (emphasis added) (citing *Polk County v. Dodson*, 454 U.S. 312, 326 (1981)).

### *Policy or Custom*

Plaintiffs allege that the City of Galveston has official policies, de facto policies, and/or customs that require police officers to show unqualified support for other officers (in essence, a "code of silence"), and this de facto policy or custom was the "moving force" behind Plaintiffs' unlawful detention and arrest, and the excessive force used against them. (Doc. No. 13 at 6-7; 11). In its Motion for Summary Judgment, the City counters that there was no constitutional violation and, even to the extent there was, maintains that no policy or custom exists that caused a constitutional deprivation. The City further asserts that there is no evidence to support Plaintiffs' allegation of the existence of a "code of silence." Rather, the City argues that the evidence establishes the contrary–"that the City has constitutionally sound written regulations prohibiting illegal conduct and that the City enforces its written regulations as evidenced by the many officers who have been disciplined by the City when they violate the City's regulations." (Doc. No. 46 at 10).

### *a. Existence of An Official Policy*

The Court initially observes that the Plaintiffs' identification of the City's violative policies or customs is not the model of clarity. Nevertheless, Plaintiffs initially appear to attempt to find support for their allegation of the existence of a "code of silence" by way of an official policy. In particular, Plaintiffs refer to one written policy, [4] namely, the "loyalty" provision, contained in the GPD's "Professional Conduct" portion of their manual, which was effective in 1996. The provision reads:

> Loyalty to the department and to associates is an important factor in departmental morale and efficiency. Members shall maintain loyalty to the department and their associates as is consistent with the law and the Code of Ethics.

Plaintiffs, through their expert witness, James Willem, argue that the "loyalty" provision "could be interpreted as a breeding ground" for a "code of silence" within the department. In particular, Willem opines that the City's written "loyalty" policy could be read to support a policy of unqualified support to City police officers. Willem Affidavit, ¶5; Willem Depo. at 60-62. However, as urged by Defendant, Willem himself concedes in his deposition testimony, that this interpretation can only be reached by disregarding the last eleven words of the written policy–namely, "as is consistent with the law and the Code of Ethics," and, aside from Plaintiffs' highly speculative and rather conclusive assertions, there is no competent evidence that the officers are mis-reading the provision in this

---

[4] Plaintiffs point to no other written policy or procedure that they claim is invalid. The Court also observes that Plaintiffs' expert, Mr. Willem, is only critical of the GPD policies he reviewed for two reasons. First, he was unable to ascertain from the material he reviewed if the policy was in place on July 5, 2005. Willem Depo. at 55:14-25; 56:19-25 - 57:1-18; 57:18-25 - 58:1-11; 58-59. Second, while he could find no basis upon which to conclude GPD's policies were unconstitutional, Willem opined that Officer Power and Sergeant Simon did not follow GPD's policies on the date of the incident. Willem Depo. at 56:1-17; 63:1-25 - 64:1; 64:5-19; 65:4-13; 66:4-24; 67-68; 71:15-25. However, a governmental employer cannot be held liable under section 1983 when a governmental employee acts in a manner inconsistent with established governmental policy. *Praprotnik*, 485 U.S. at 121-22.

9

manner. *See Eastman Kodak Co. v. Image Tech. Servs.*, 504 U.S. 451, 469 n. 14 (1992) (emphasizing that "only *reasonable* inferences can be drawn from the evidence in favor of the nonmoving party."). Further, as Mr. Willem concedes in his deposition, while he would have worded the policy differently, it is not constitutionally inadequate or inappropriate. Willem Depo. at 62. Thus, upon this record, no competent summary judgment evidence exists, sufficient to create a genuine issue of material fact, that the City's written regulation prohibiting illegal conduct by its officers was either unconstitutional or unsound.

### b. *Existence of An Unofficial Policy or Custom*

In the alternative, Plaintiffs maintain that GPD had a custom or practice (i.e., de facto policy) of condoning or standing behind it's officer's unlawful detention or use of excessive force through a code of silence. In its Motion for Summary Judgment, Defendant maintains no such custom exists.

The law is clear that evidence of an isolated incident is insufficient to establish a custom. *Pineda*, 291 F.3d 329. Rather, Plaintiffs must demonstrate persistent, repeated, constant violations to establish a custom. *Piotrowski*, 237 F.3d at 581. Here, the only evidence offered by Plaintiffs to demonstrate knowledge, deliberate indifference, or the widespread nature of the alleged custom of a "code of silence" is evidence of the failure to reprimand or discipline Officer Powers, evidence of subsequent events (i.e., Ms. Nix; an unidentified man who was arrested during Kappa weekend; Reverend Lee; and a 2007 arrest witnessed, in part, by Bobby Fontenot), the testimony of Mr. Willem, and 106 complaints alleging various infractions against GPD officers for a three year period prior to the July 5, 2005 incident. Unfortunately, for Plaintiffs, this evidence is insufficient to survive summary judgment. Evidence of isolated instances of official misconduct by a governmental entity's nonpolicy-making employees are inadequate to prove knowledge and acquiescence by the City's policymakers. *Fraire*, 957 F.2d at 1278 (evidence of City's failure to discipline a police officer for

10

an isolated incident involving alleged unlawful detention, arrest or use of excessive force to effect the arrest will not give rise to the inference the City had an official policy or custom authorizing or encouraging police misconduct); *see also, Burge v. St. Tammany Parish*, 336 F.3d 363, 371 (5th Cir. 2003) (noting that evidence of an isolated occurrence will not support municipal liability predicated on a widespread custom theory); *Bennett*, 735 F.2d at 862 ("isolated violations are not the persistent, often repeated constant violations that constitute custom and policy."). Nor will evidence of subsequent incidents suffice. *See e.g., Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82, 92 (5ht Cir. 1992) (sufficiently numerous *prior* incidents of official misconduct may tend to prove a custom or practice to impose liability on municipality). The Court also refuses to infer any widespread practice by the City based exclusively on Plaintiffs' extrapolation of data from the civilian complaints filed over three years because the evidence shows, contrary to Plaintiffs' claims,[5] that GPD ordinarily investigates civilian complaints against officers, as was the case here, and has disciplined and/or reprimanded officers for infractions. *Estate of Davis*, 406 F.3d at 384 n. 45 (noting that the number of complaints does not bear any relation to their ultimate validity); *see also*, *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1991) (affirming summary judgment where plaintiffs produced no evidence to indicate that the city either now or in the past failed to investigate complaints based on use of force by police officers and discipline them where discipline was justified). Moreover, Plaintiffs fail to place the 106 complaints in any relevant context from which a reasonable jury could conclude that the City knowingly maintained any widespread custom or acted with deliberate indifference to

---

[5] To the extent Plaintiffs now suggest that the Defendant somehow limited their discovery of civilian complaints over this time period is not well taken. Pursuant to Plaintiffs' request the Court ordered the Defendant to make all such complaints available for a three year period preceding the incident and the Defendant complied. At no time thereafter did Plaintiffs return to the Court complaining Defendant did not comply, nor did they, at any time thereafter, seek any additional discovery.

"known or obvious consequences" that constitutional violations would result if it did not alter its conduct. *Piotrowski*, 237 F.3d at 579; *see also, Pineda*, 291 F.3d at 330 (refusing to impute knowledge to the municipality based on the numerous offense reports it collects because this would amount to *respondeat superior*).

The only remaining evidence before the Court is the opinion of Plaintiffs' expert witness, James Willem, a retired police officer from the New Orleans Police Department.[6] As a preliminary matter, the Court finds that James Willem's opinions are unsupported in this record by any detailed explanation or any empirical, psychological, or scientific research or by peer reviewed articles. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 145 (1997); *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007); *Guy v. Crown Equipment Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). However, even if Mr. Willem's conclusions were shown to be supported by "a reliable basis in the knowledge and experience of his discipline," *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593-94 (1993), Plaintiffs evidence is insufficient to create a genuine issue of fact to overcome summary judgment. During his deposition, Willem conceded that he reached his opinion having no information about any prior instances from which the Chief or the City would have knowledge for purposes of deliberate indifference. Willem Depo. at 77:12-17; 99; 110. Nor do any of the prior civilian complaints provide such basis.[7] Moreover, to the extent Mr. Willem's testimony is

---

[6] The City submitted objections and/or moved to exclude the Plaintiffs' expert witness (James Willem), as well as a witness (Bobby Fontenot) (Doc. Nos. 47, 63), the Plaintiffs have responded (Doc. Nos. 48, 64-65), Defendant has replied (Doc. No. 66), and Plaintiffs surreplied (Doc. No. 67).

[7] To the extent Plaintiffs can be heard to raise an allegation of the inadequate investigation in their Surreply, there is no evidence that the City or its policy-maker, Chief Mack, failed to enforce its detention, arrest, excessive force, or O.C. treatment policies through either not investigating or under-investigating citizen complaints. There is also no proof that any alleged custom of under-investigation affected line police officers' thinking regarding unlawful conduct (i.e., detentions, arrest, use of force) or "affirmatively caused the alleged constitutional injury."

12

admissible, it is well-established in this Circuit that the mere opinion of an expert is insufficient, standing alone, to impose liability on the City. *See Snyder*, 142 F.3d at 799 (when seeking to prove a municipality's malevolent motive, plaintiffs must introduce more evidence than merely an opinion of an expert witness). The Supreme Court has also made clear that liability does not attach merely because "an injury or accident could have been avoided if an officer had better or more training sufficient to equip him to avoid the particular injury-causing conduct." *City of Canton*, 489 U.S. at 391.

Accordingly, while the Court must draw all reasonable inferences in favor of the nonmoving party, Plaintiffs have failed to bring forth competent summary judgment evidence upon which to create a genuine issue of material fact from which a reasonable jury could conclude that such a de facto policy existed, that the City was deliberately indifferent, or that the alleged de facto policy or custom was a "moving force" behind the claimed violations. The Court concludes Defendant's Motion for Summary Judgment must be **GRANTED** on this point.

*Inadequate Training, Supervision and Hiring*

Plaintiffs also allege that the City's official policies, de facto policies, and/or customs that require police officers to show unqualified support for other officers have resulted in the improper training, retraining, supervising, disciplining, and counseling of police officers.

A claim of "inadequacy of police training may serve as the basis for Section 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come in contact....Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under section 1983." *City of Canton*, 489 U.S. at 388. The same rationale applies to a failure to supervise claim. To establish

deliberate indifference, a plaintiff must show at least a pattern of violations, fairly similar to what ultimately transpired, so that the failure of the city to respond with different training or better supervision reflects a deliberate or conscious choice to endanger constitutional rights. *Estate of Davis*, 406 F.3d at 381-83; Roberts v. City of Shreveport, 397 F.3d 287, 292 (5th Cir. 2005).

In the present case, the City presents competent summary judgment evidence that its police officers are taught the requirements for lawful detention, arrest, use of reasonable force, and the treatment of subjects after exposure to pepper spray; and that police officers are adequately trained in these areas. Additionally, the record evidence contains rules and regulations promulgated by the City regarding lawful detention, arrest, the use of reasonable force, and the treatment after exposure to pepper spray.

Although Plaintiffs allege the City inadequately trains, supervises, and hires[8] its police officers, their allegations are wholly unsupported. Plaintiffs have not referenced elements or components of the City's training procedures or polices in any meaningful way.[9] Plaintiffs have not pointed out areas in which those policies are deficient or areas in which those polices need revision. *See Benevides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992) (recognizing that for liability

---

[8] While Plaintiffs present allegations concerning GPD's hiring practices, the record is devoid of any evidence upon which the City could be found liable for any hiring decisions. In fact, the only evidence before the Court concerning hiring comes from James Willem who conceded in his testimony that he was not aware of GPD's hiring policy for officers and had no information to suggest that the hiring program was constitutionally deficient. Willem Depo. at 103:9-12.

[9] The Court observes that, in an attempt to support this allegation, Plaintiffs rely on the testimony of James Willem, however, his testimony is insufficient to create a disputed issue of material fact. In his testimony, Mr. Willem fails to identify a particular training program that he claims is deficient, much less specify how the training received is deficient or inadequate. Instead, Mr. Willem merely posits that additional, unspecified training should have been provided. Willem Depo. (Correction/Changes) at 104. This is clearly insufficient to impose liability on the City. *See Roberts*, 397 F.3d at 293 (5th Cir. 2005) (mere proof that injury could have been prevented if the officer had received better or additional training cannot, without more, support liability).

to attach on an "inadequate training" claim, a plaintiff must allege with specificity how a particular training program is defective."). Thus, since the basis of Plaintiffs' claim is that the City failed or improperly trained and/or supervised it's officers, Plaintiffs would need to put forth some evidence directly implicating the training or supervision they received.[10]  "In resolving the issue of a city's liability, the focus must be on [the] adequacy of the training program in relation to the tasks the particular officers must perform." *City of Canton*, 489 U.S. at 390. Further, "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id*. at 390-91. Nothing Plaintiffs provided in opposition to Defendant's Motion addresses the adequacies of the officer's training or supervision, and Plaintiffs' opposition fails to raise evidence creating a genuine issue of material fact in this regard.[11]  Finally, even assuming Plaintiffs had presented any such evidence, Plaintiffs' claim would fail as a matter of law because there is no evidence of a pattern of violations, fairly similar to what ultimately transpired, from which a reasonable jury could conclude that the failure to train or supervise or to respond with better supervision reflected a deliberate or conscious choice to endanger constitutional rights. *See Estate of Davis*, 406 F.3d at 381-83; *Roberts*, 397 F.3d at 292. Further, there is no competent summary judgment evidence before this Court that

---

[10] To the extent Plaintiffs claim that the presence of twelve police officers at Plaintiff Danny Allen's criminal trial is evidence of inadequate supervision, the Court cannot agree. *See Piotrowski*, 237 F.3d at 578 (an isolated instance will not suffice to impose liability upon a municipality).

[11] In their response to Defendant's Motion for Summary Judgment, Plaintiffs argue that "[t]he City may make sure that it has its police officers punch all the right check lists for state mandated training requirements but it allows an unqualified support/code of silence to undermine all of this effort by its officers to circumvent the state training and put in its place the de facto policy of unqualified support/code of silence as is evidenced by the actions of the departments offices [sic] expressed above as concerns this incident and the other incidents to include Ms. Nix and the other unidentified individual." (Doc. No. 37 at 11-12). However, as this Court has previously discussed above, no competent summary judgment evidence supports Plaintiffs' contentions.

any such inadequacies, to the extent they existed, were the moving force behind the alleged constitutional violation.

The Court, therefore, concludes Defendant's Motion for Summary Judgment must be **GRANTED** on this issue.

### *Ratification Theory*

Plaintiffs seek to impose liability on the City of Galveston based on the theory that the City "ratified" the unlawful conduct of its officers. Ratification occurs "when a subordinate's decision is subject to review by the municipality's authorized policymakers," and "the authorized policymakers approve a subordinate's decision and the basis for it." *Praprotnik*, 485 U.S. at 127. Ratified misconduct is "chargeable to the municipality because [the authorized policymakers'] decision is final." *Id.*; *See also Milam v. City of San Antonio*, 113 Fed.Appx. 662, 626 (5th Cir. 2004) (recognizing that a "policymaker could 'ratify' a subordinate's illegal conduct, thus putting the force of municipal policy behind it."). Thus, Plaintiffs' detention, Tottenham's arrest, and the alleged use of excessive force, even if not otherwise attributable to an official policy or practice, would support the City of Galveston's liability *if* the City (through the Chief of Police) knowingly approved of Officer's Power's alleged misconduct against Plaintiffs.

Plaintiffs argue that Police Chief Mack, Sgt. Simon and all the other officers involved in the incident and its subsequent investigation, approved of Officer Power's detention and use of force on the night in question. Plaintiffs further allege that the conduct of Officer Powers was ratified by Chief Mack and the City because Officer Powers was not disciplined or reprimanded for the incident. The mere fact that the policymakers failed to take disciplinary action does not normally show that they knew of and approved the illegal character of officers' actions or that "it accorded with municipal policy." *Milam*, 113 Fed.Appx. at 628. In fact, the Fifth Circuit has cautioned, it is difficult to prove

"how a policymaker's ineffectual or nonexistent response to an incident, which occurs well *after* the fact of the constitutional deprivation, could have *caused* the deprivation." *Id*. at 628.

Further, even considering, as Plaintiffs suggest, that Chief Mack and Sergeant Simon may have made admissions in their depositions (i.e., that they did not conclude Officer's Power's conduct was unlawful), those admissions are not sufficient to establish Plaintiffs' theory of ratification. Ratification creates liability where "a municipality's final policymakers are held effectively to have made policy or condoned creation of a custom by ratifying the unconstitutional or illegal actions of subordinate officers or employees." *Turner v. Upton County*, 915 F.2d 133, 137 (5th Cir.1990). Plaintiffs were therefore required to present evidence not merely that a policymaker knew and approved of the alleged unlawful detention, arrest and use of excessive force, but that the policymaker knew that the detention and use of force violated Plaintiffs' civil rights because the detention and arrest were unlawful and the use of force was clearly excessive to Officer Power's apparent need to defend himself. In the present case, upon the complaint of Plaintiffs, an investigation was conducted of the incident by the internal affairs officers, as well as by Plaintiff Danny Allen's then employer, the Galveston County Sheriff's Department. The investigation by internal affairs officers consisted of a review of the reports concerning the incident; the accounts of the parties involved in the incident, which included the Plaintiffs' statements and complaint; an interview with witness Bobby Fontenot; and a review of the videotaped footage of the incident. Based on the investigation by internal affairs, the conclusion was reached that Plaintiffs, not Officer Powers, acted inappropriately, and no discipline was recommended or taken against Officer Powers. If the relevant policymaker believed the officers' version of events, coupled in this case with the videotape of the incident, then the defendant did not ratify "unconstitutional or illegal actions." *Turner*, 915 F.2d at 137. The Fifth Circuit has explicitly held that a municipality is not liable under the ratification theory where a Police Chief accepts his

17

officers' version of events, so long as "that version did not show that the deputies' actions were manifestly indefensible." *Coon v. Ledbetter*, 780 F.2d 1158, 1162 (5th Cir.1986); *see also Fraire*, 957 F.2d at 1268 ("Plaintiffs present nothing but conjecture when they allege that [the municipality] must have known [the officer] was lying.").

The City of Galveston's evidence, the deposition testimony of the officers and the Plaintiffs, as well as the videotape, contradict Plaintiffs' theory of ratification, and this Court finds that a reasonable jury could not reach a verdict in favor of Plaintiffs on this theory. Plaintiffs do not (and cannot) argue that they introduced summary judgment evidence sufficient to support a reasonable jury verdict that the City of Galveston's policymaker disbelieved the officers' account, but ratified his conduct regardless. Plaintiffs' bare assertions to the contrary are not sufficient to overcome summary judgment.

The Court, thus, must **GRANT** Defendant's Motion for Summary Judgment on this point.

## CONCLUSION

Accordingly, for the foregoing reasons, it is **ORDERED** that Defendant's Motion for Summary Judgment (Instrument No. 31, 32) is **GRANTED** and this action against Defendant, the City of Galveston, Texas, is **DISMISSED**, **with prejudice, in its entirety**.

**DONE** at Galveston, Texas, this \_\_\_\_\_31st\_\_\_\_\_ day of March, 2008.

John R. Froeschner
United States Magistrate Judge